SUCCESSION OF SARAH BAUM.—JOHN KELLAR, Opponent, *v.* JOHN D. FINK.

An executor who permits a person to retain the money of the succession in his hands and appropriate it to an assumed debt against the succession does not thereby incur the penalty of 20 per cent. interest per annnum, under the Act of 13th March, 1837; the funds never having come into the hands of the executor.

An executor of an estate administered another estate as syndic, and filed, as syndic, an account, which was homologated, showing an indebtedness to the succession which he administered. *Held*: That this amount came to his hands as executor, within the meaning of the Act of 13th March, 1837, and for not placing it on his account, he was liable to the penalty imposed by that Act.

An executor who neglects to account for money received, does not superadd the forfeiture of his commissions to the penalty imposed by the 3d section of the Act of 13th March, 1837.

APPEAL from the Second District Court of New Orleans, *Lea*, J.
    *G. Schmidt* and *J. D. Mix*, for opponent and appellant. *W. C. Micou* and *H. D. Ogden*, for defendant.

BUCHANAN, J. *Sarah Baum*, the wife of *John Kellar*, for some reason or other, only known [to the parties, chose to keep her marriage secret during many years, although cohabiting with her husband: a strange instance of a woman preferring the worse than equivocal position of a concubine to the honorable and advantageous one of a married woman. She made her will as a single woman, naming as her executor, her son-in-law, *Peabody*, who, proving unfaithful to his trust, was removed, and *Thomas Powell* was appointed by the court in his place. *Powell* also became a defaulter and was dismissed; and in 1842 *John D. Fink* was appointed dative testamentary executor, and has held the trust ever since.

Shortly after the succession was opened, *John Kellar* instituted suit against the executor to be recognized as the husband of *Sarah Baum*, and claiming an interest as surviving partner in community in her succession. This suit remained a long time untried. The *Canal Bank*, in 1842, intervened as a creditor of *Kellar's*, and prosecuted the case to a final judgment, and it was decided in the Supreme Court in 1845. The case will be found reported in 11 Robinson, page 314. In that case the court affirmed the decision of the court below, which declared that *John Kellar* was the husband of *Sarah Baum*, and ordered

that the property heretofore considered as belonging to the succession of the latter, be inventoried as belonging to the community.

In conformity with this decision, an inventory of the community property was made by Duplessis, Notary, on the 16th January, 1846.

It is worthy of note, that *Fink* assisted at this inventory, and signed the same in his capacity of dative testamentary executor of *Sarah Baum*.

On the 18th November, 1843, *Fink* rendered an account showing the amount of assets and liabilities of the estate, and payments made by the executor, to that date. In the list of passive debts, in that account, is found an item of $750 due to *M. W. Hoffman*, which will be the subject of further remark. The balance in the executor's hands by this account was $131 05.

On the 17th January, 1846, after the judgment of the Supreme Court, recognizing *Kellar* as the husband of *Sarah Baum*, and decreeing all the property of the latter to belong to the community of acquets, Mr. *Fink* filed another account of administration, divided, like the former one into four heads. 1. Sums due to the estate. 2. Sums received by the executor. 3. Debts of the estate. 4. Sums paid by the executor. According to this account, the amount which had come into the hands of the executor to date, including $131 05 balance from previous account, was $1836 73 ; that of the payments made by him $1645 02, including the debt of *Hoffman* for professional services, of $7 50, included in the former account, and of the debts of the estate unpaid, $188 38. The balance in the hands of the executor according to this account, was $191 71 ; which after satisfying all the debts unpaid, would have left the sum of three dollars and thirty-three cents, balance to the credit of the estate.

On the 17th May, 1852, *John Kellar*, styling himself surviving partner in community with the deceased, and creditor of the succession, took a rule upon the executor *Fink* to file a final account of his administration and exhibit his bank book.

*Fink* excepted to this rule, averring that all the debts of the estate, except attorney's fees and court charges had been long since paid, and denying *Kellar's* quality of surviving husband and partner in community of *Sarah Baum*.

The exception being overruled, and the rule made absolute, the dative testamentary executor filed an account of his administration on the 10th July, 1852, showing a balance due himself from the estate in final settlement, of $144 08 and outstanding debts, in addition to the amount of $700.

The account was opposed by *Kellar*, personally and as tutor of the grandchild and heir of *Sarah Baum*, on several grounds, which will be examined in their order.

1st. That the executor had collected a debt due the estate by the *Canal Bank* of $15,000, which was not accounted for.

The evidence satisfies us that the claim against the *Canal Bank* was never received either by the executor himself, or any person acting for him. It appears that *M. W. Hoffman*, Esq., as attorney of *John Kellar*, received the sum of $6964 24, in full settlement of that claim, and we find in the record an account current of Mr. *Hoffman* with Mr. *Kellar*, consisting on the debit side of that sum of money, and on the credit side of various charges in offset of the same, and showing a balance due Mr. *Hoffman* of $76 06. In our opinion, this account current needs not be considered in the present case. It has nothing to do, properly speaking, with this issue. The question here is about the liability of

*Fink*, as executor, to account for this claim against the *Canal Bank*. The proof having failed to establish that it was ever received by him or for him, as executor, it becomes immaterial and irrelevant to this issue, to enquire into the correctness of the charges made by *Hoffman* in this account current.

The 2d and 3d grounds of opposition, oppose the items of fees of *Hoffman* contained in the executor's account, item by item, as being exorbitant, unjust, and not allowable; and claim damages of 20 per cent. according to the Act of 1837 from the executor, for having paid *Hoffman* without an order of court.

The executor has debited himself, in his account under consideration, with the following sums:

1849, Feb 20.   Cash received by *Hoffman*, as counsel of the executor.
and appropriated to the payment of his (*Hoffman's*)
claims for fees against the estate, - - - - - - - $595 50
ditto                  ditto      - - - - - - - 764 83
ditto                  ditto      - - - - - - - 678 87

Total - - - - - - - - - - - - $2,039 20

On the opposite or credit side of the account of the executor are various items of fees for professional services rendered by Mr. *Hoffman*. In considering the admissibility of these charges, the facts of the cause, as above stated, require us to divide them into two classes. 1st. Those bearing date previous to the rendition of the former account filed by the executor, and 2d. Those accruing since that time.

The fees of Mr. *Hoffman*, of the first class, amount to $2,025, upon which the account gives a credit of $750, "as per account of executor on file," and leaving a balance still due of $1,275. We think that this charge of $1,275 cannot be allowed. The record shows that Mr. *Hoffman* had been the legal adviser of the executor from the commencement of his administration. The accounts of November 18, 1843 and of January 17, 1846, are therefore binding upon Mr. *Hoffman*, no less than upon the executor himself. As we have seen, that of November, 1843, states the amount due by the estate to Mr. *Hoffman* to be $750; and that of January, 1846, shows that said claim was then paid, and states the debts existing at the time of filing the second account, among which there is nothing charged as due to *Hoffman*. These are to be taken as confessions that Mr. *Hoffman* has been paid in full for his claims against this estate up to the date of the last of the two accounts in question.

The second class of items of fees of Mr. *Hoffman* for professional services in this account, embraces five items, viz:

1848—Suit of *Martin* v. *Fink*, executor, - - - - - - - - - $400 00
Defending intervention of *McHenry*, in suit of *Fink*, executor,
v. *Martin*, by injunction - - - - - - - - - - - - 250 00
Suit of *Fink*, executor, and *Black* v. *Martin & McHenry*, to
annnul sale, in District and Supreme Courts, - - - - 375 00
Obtaining injunction against *Levy*, auctioneer, to arrest sale
of property, - - - - - - - - - - - - - - - - - 50 00
Collecting judgment against *Martial LeBeuf*, as security of
*McHenry*, - - - - - - - - - - - - - - - - - 50 00

$1,125 00

The evidence of various witnesses has been taken in relation to the reasonableness of the charges thus made, and we think that this point is sufficiently established. We therefore allow the claims of Mr. *Hoffman* against the estate to the extent of $1,125. But it appears that the executor has allowed Mr. *Hoffman* to retain in his hands a sum of two thousand and thirty-nine dollars and twenty cents for about four years and to appropriate that sum to assumed claims of Mr. *Hoffman* against the estate, instead of depositing said sum in bank. For this the opposition claims that the executor be mulcted in damages.

The Act of March 13, 1837, section 3d, provides "That all executors, administrators, etc., shall deposit all moneys heretofore collected by them as such and all the moneys hereafter collected, as soon as the same shall come into their hands, in one of the chartered banks of this State, or in one of their branches, allowing interest on deposits, etc; and if any executor, etc., shall fail to comply with the provisions of this section, etc., then such executor shall be condemned to pay to the use of the estate twenty per cent. per annum interest on the amount not so deposited." We do not think this penalty attaches in the present case, which does not come within the letter of the Statute; the funds in question never having come into the hands of the executor. We do not mean to be understood as deciding that the executor is not liable to account for all funds collected by his attorney, in the same manner as if they had been collected by himself. But penal Statutes should be strictly construed; and of this nature is the 3d section of the Act of 1837. See also case of *Pigneguy's* estate, 7 Rob.

4th. The fourth ground of opposition relates to a certain judgment of *Powell* v. *Levy* bought by the executor at sheriff's sale for the account of this estate, and which judgment the opposition states has been collected by the executor. The record shows that the judgment in question was bought by the executor for the account of this estate, as alleged, for the sum of $150, and that the executor credited the estate, in his account of 18th November, 1843, with said sum sf $150, as if the same had been received instead of being paid out. *Levy*, the judgment debtor, appears to have taken the benefit of the State Insolvent Law and also of the United States Bankrupt Law of 1841. In the State Court, the executor of this estate was syndic of *Levy's* estate, and as such filed a tableau of distribution which was homologated in November, 1844, allotting a dividend of $675 22 to himself as holder of *Powell's* judgment. In the United States Court the commissioners in bankruptcy filed a report which was homologated in August, 1844, allotting a dividend of $36 98 to *Thomas Powell*, on his judgment.

The executor has evidently been guilty of breach of duty in treating this judgment thus bought at sheriff's sale as his individual property; and we think the District Judge erred in not allowing damages under the Act of 1837, upon the sum of $675 22, it being clear from the record, that that amount was in his hands in November, 1844, the date of the judgment of homologation of his account as syndic of *Levy*, in the First Judicial District Court of Louisiana. As to the dividend of $36 98, the dividend declared in the United States District Court for this District, there is no proof that it has come into his hands. He cannot, therefore be charged with damages, under the Act of 1837. But we think that he is liable for that sum, it being his duty to have collected it, if he has not done so.

5th. The fifth ground of opposition is to the commissions of the executor,

SUCCESSION OF
BAUM

charged in the account; which commissions the opponent contends have been forfeited by the misconduct of the executor. The correctness of the amount of the charge is not disputed; and admitting that the executor has laid himself liable to the penalty of the 3d section of the Act of 1837, by neglecting to account for funds received, the Statute does not superadd the forfeiture of his commissions to that penalty.

6th.  The sixth and last ground of opposition is to the items of debts still due and unpaid by the succession, viz: *Robert Farr*, $490; *Williams*, $150; Dr. *Davezac*, $60. As to *Farr's* debt, we observe the identical amount of $490 charged, as paid him by Mr. *Hoffman*, in his account with *Kellar*, already spoken of. It is probable, therefore, that it has been paid. There is, besides, no proof in the record of the correctness of this claim or that of *Williams*. As to the claim of Dr. *Davezac*, it would seem to be a balance of a larger amount ($140) charged as due by the estate, in the executor's account of 18th November, 1843; and which is not among those mentioned as paid in the account of 17th January, 1846.

Having thus gone through the opposition to the account filed, it only remains to notice an item in that account to the credit of the estate, which seems to have crept into it through error, and should be stricken off. It reads as follows:

"To this amount paid by *John Kellar*, to *M. W. Hoffman*, balance of

his fees, and carried on the other side,    -    -    -    -    $321 80"

This amount is the balance against *Kellar* in account current with *Hoffman*, about the *Canal Bank* judgment collected by *Hoffman* for *Kellar*, as above mentioned.

We have already expressed our opinion that this whole matter is irrelevant to the present issue. If *Kellar* has, in point of fact, paid Mr. *Hoffman* the balance of $321 80, as herein stated, it is not seen how that payment can count to the debit of *Fink*, executor, in account with *Sarah Baum's* estate, unless it be as a mere counter entry to balance an entry on the credit side of this account. It appears, indeed to be stated in that way; but a careful perusal of the account has not shown us any such credit entry. The sum of $321 80 is therefore to be deducted from the debit side of the executor's account.

We state the account as follows:

| | | |
|---|---:|---:|
| Debit side of the account of the executor as filed,    -    .-    - | | $3,817 54 |
| From which deduct | | |
| Cash paid by *Kellar* to *Hoffman*,    -    -    -    - | $321 80 | |
| Balance due *John D. Fink*,    -    -    -    -    - | 144 08 | |
| | | 465 88 |
| | | |
| | | 3,351 66 |
| And add to the debits | | |
| Dividend on *Powell's* judgment against *Levy* in the District | | |
| Court,    -    -    -    -    -    -    - | 675 22 | |
| "    in United States District Court,    -    -    - | 36 98 | |
| | | |
| | 712 20 | |
| Less this amount paid by *Fink* at sheriff's sale for said | | |
| judgment,    -    -    -    -    -    -    -    - | 150 00 | |
| | | |
| | 562 20 | |

Damages at twenty per cent. per annum, for ten years, on
$525, proved to have come into the hands of the syndic
for account of the estate, in 1844,  -  -  -     1,050 00
                                                        1,612 20

      Corrected amount to *Fink's* debit,  -  -  -     $4,963 86
Credit side of the account, as stated by the executor,     $3,817 54
From which deduct balance charged as due *Hoffman* prior
to 1844,  -  -  -  -  -  -  -  -     1,275 00
                                                        2,542 54

      Corrected balance to credit of the estate,  -  -     $2,421 32
It is therefore adjudged and decreed that the judgment of the District Court
be reversed; that the oppositions herein filed be sustained, the balance due by
the executor in account, established at the sum of two thousand four hundred
and twenty-one dollars and thirty-two cents, for which judgment is hereby ren-
dered in favor of *John Kellar* against *John D. Fink*, personally; and that the
costs of the court below be paid by the estate, except those of the appeal, which,
together with the costs of this court, shall be paid by the appellee.

BUCHANAN, J., on application for rehearing. It is ordered that the judgment
rendered by this court on the 22d May last be amended so as to read as fol-
lows:

It is ordered and decreed that the judgment of the District Court be reversed;
that the oppositions herein filed be sustained, the balance due by the executor in
account established at the sum of $2,421 32, for which judgment is hereby
rendered in favor of *John Kellar* against *J. D. Fink* personally, and that the
costs of the court below be paid by the estate, except those of the appeal,
which, together with the costs of this court, shall be paid by the appellee; and
it is further ordered that the rehearing prayed for in this case be refused.